**TAX LIMITATION LEAGUE, Inc. v DAY**

Common Pleas Court, Franklin Co

Decided July 3, 1939

the state of Ohio in the treasurer's office by reason of defalcations and embezzlements of one W. Merle Cortner, chief bond clerk in said treasurer's office, in the amount of $36,513.77, which shortage has never been repaid into the treasury of the state of Ohio." Then follows a schedule of the amounts of said shortages between certain periods as it would affect the different surety companies then on Harry S. Day's bond as treasurer of state.

The petition further recites that on May 22, 1936, the Bureau of Inspection and Supervision of Public Offices filed a report, showing the above mentioned shortages in public funds of the state of Ohio, in the office of the auditor of state and a certified copy thereof in the office of the attorney general; that subsequently the plaintiff filed a written request with the attorney general asking him to bring action on behalf of the state to recover said shortages, but that the attorney general has refused to do so.

Wherefore, judgment is prayed for in the sum of $36,513.77.

The joint answer of the defendant, Day, and the surety companies admits that Day was treasurer of state during the periods mentioned and that the defendants were sureties on the official bonds of said Day covering various periods of his term as state treasurer.

Defendants further admit that during the said period and while Day was treasurer, shortages occurred in depository trust fund 18-B in said state treasurer's office of money belonging to certain banks and trust companies which represented the proceeds of the collection of bonds and coupons which had been deposited with the state treasurer by such banks and trust companies.

Further answering and for want of definite knowledge, the defendants deny each and every other allegation contained in said petition except such allegations as have hereinabove been admitted to be true.

For second defense, defendants say that Harry S. Day has repaid the sum of $4,729.14.

Robert. J. Grossman and W. Thurman Todd, Mt. Vernon, Ohio, and Stuart R. Bolin, Columbus, for plaintiff.

Power & Barton, Columbus, for defendants.

## OPINION

By LEACH, J.

This cause coming on for hearing on the pleadings and, the evidence, a jury being waived, was tried and submitted to the court. The pleadings upon which the case was tried was a pleading designated as petition, amended by interlineation, and an answer. In substance, said petition alleges that the plaintiff is a corporation, a taxpayer of the state of Ohio, and that the defendant, Day, was between January 12, 1931. and May 21, 1935, the treasurer of the state of Ohio, and that the other named defendants were sureties on his official bonds during a part or all of said time; that during said period and while said Harry S. Day was state treasurer "there occurred shortages in the public funds of

The evidence and stipulations of counsel disclose the following facts: That numerous banks in order to qualify themselves to do a trust business in the state of Ohio had deposited with the state treasurer bonds with interest coupons attached pursuant to §710-150, GC, which provides in part as follows:

"No trust company or corporation, either foreign or domestic, doing a trust business shall accept trusts which may be vested in, transferred or committed to it by a person, firm, association, corporation, court or other authority, of property within this state, until its paid-in capital is at least one hundred thousand dollars, and until such corporation has deposited with the treasurer of state in cash the sum of one hundred thousand dollars, except that the full amount of such deposit by such corporation may be in bonds or other interest-bearing obligations of the United States or those for the payment of principal and interest of which the faith of the United States is pledged, including bonds of the District of Columbia, bonds of this state or any municipality or county therein, etc. * * * From time to time said treasurer shall, with the approval of the superintendent of banks, permit withdrawals of such securities or cash, or any part thereof, upon deposit with him and approval of the superintendent of banks, of cash or other securities of the kind heretofore named, so as to maintain the value of such deposits as herein provided, and so long as it continues solvent he shall permit it to collect the interest on its securities so deposited."

Various other banks in order to qualify themselves as eligible to obtain deposits of state funds, and as security for the payment of funds deposited with said banks, had deposited with the state treasurer various bonds with interest coupons attached thereto, pursuant to the provisions of §330-3, GC, which in substance requires the depositing of such bonds as surety for such deposits of state funds.

During the period of time mentioned W. Merle Cortner was chief bond clerk in the State Treasurer's office, and when coupons on such securities would mature, Cortner, instead of sending such coupons to the banks or trust companies owning such securities, or cashing the same and depositing them in the State Treasury to the order of such banks, or to the order of the superintendent of banks, if such bank was a closed bank, cashed the coupons and converted the proceeds thereof to his own use. Of course, the coupons were the property of the various banks, all of which were entitled to the interest on their deposited securities as such interest matured, at least in the absence of the depository bank having failed to account for money deposited by the State with it for which such bonds were security, or in the case of a trust department of a bank having failed to fully comply with the laws of a trust company and to perform its obligations to its cestui que trust, and it is not pleaded and it does not appear from the evidence that any of said banks or trust companies were anywise in default to the state of Ohio.

Coupons, representing interest due depository banks converted by Cortner to his own use, were in the amount of $3996.22, and coupons, representing interest due the owners of bonds put up by various banks to qualify them to do a trust business, converted by Cortner to his own use, were in the amount of $32,517.55, making a total of $36,513.77, of which total amount reimbursement has been made by Day of $4729.14, leaving the balance of $31,784.63.

To an earlier petition, the defendants had filed a motion to require the plaintiff to make his petition definite and certain by stating what funds in the possession of the State Treasurer's office were embezzled, which motion was overruled upon the plaintiff "amending his petition by interlineation to show that public funds had been embezzled by an employe of the State Treasurer." The petition was amended by interlineation of the words "Public funds of the state of Ohio". In this form the

petition was demurred to and the demurrer was overruled. The demurrer set forth, among others, the grounds that plaintiff does not have legal capacity to sue and that the petition fails to state a cause of action in favor of this plaintiff against these defendants. As noted, the petition to which demurrer was filed did not disclose what particular funds or coupons were short, and for all that appeared in the petition, the shortage might have been in the general fund, the only recitation being that the said shortages were in "the public funds of the state of Ohio."

The demurrer was overruled by another branch of this court, properly, I think, unless the allegation that such shortages were in public funds of the state of Ohio was to be treated as a mere legal conclusion. The court did not so treat it and gave no consideration to the question ultimately involved here as to whether such funds were public funds in the sense that a taxpayer is authorized to bring suit for the recovery thereof. There is little or no question under the authorities that Harry S. Day and his sureties are liable in a proper action for such shortages, even though Merle S. Cortner and his sureties may be responsible back to Day.

Whether the recovery of the proceeds of the coupons, under the facts above stated, converted by Cortner to his own use, present a proper subject for a taxpayer's action, that is, whether the plaintiff has legal capacity to sue—whether the facts present a cause of action in favor of this plaintiff as a taxpayer against these defendants depends upon whether or not the unauthorized and illegal acts complained of would result in an increase in taxation thus resulting in an added burden to the taxpayers of Ohio as a class, if said money is not recovered; or if the money were recovered would result in a saving to the taxpayer or to all the taxpayers of Ohio; in other words, would the recovery or non recovery affect the taxpayers of Ohio?

As stated by the Court of Appeals of Franklin county in the case of **Harnett**

**v Edmonston, 44 Oh Ap 304,** from opinion page 309:

"In view of the general denial, the burden is upon the plaintiff to establish his legal capacity to sue",

and at page 310:

"We think the rule is well settled that a taxpayer like any other party to a proceeding in equity must show that some act is about to occur which will result in some material injury to him and for which he has no other adequate remedy."

By "material injury to him", we take it that the court meant material injury to him in his capacity as a taxpayer. While the court speaks of a proceeding in equity, we do not understand the rule to be different from an action at law brought by a taxpayer which the courts have said partakes of certain of the characteristics of a proceeding in equity.

Said the court further:

"It may be observed in passing that before plaintiff (a taxpayer) is entitled to relief in any capacity in which he may sue, it must appear that he has been, or will in some way be, injured or damaged".

This doctrine was reaffirmed by the same court in **State, ex rel v Merrell, 44 Oh Ap 347.** This same doctrine is recognized in **Trustees of Perry Township v Garver, 41 Oh Ap 232.** This was an action brought by Garver as a taxpayer to enjoin the township trustees from contracting for the construction of a partition fence. Said the court in its opinion, page 237-238:

"Our understanding of the law where the legislature has spoken as in the matter of expenditure of county and municipal funds, is that the interest of other taxpayers in the taxing district must be such an interest as is financial in its nature and net result. That is,

that the act or expenditure will in some degree, be it great or small, ultimately cause other taxpayers a financial loss, or deprive them of the right and enjoyment of public property. In other words, that the public treasury of the taxing district may to some extent to depleted or impaired, by reason of which other taxpayers will be called upon to pay in part, or replenish the treasury for the sum to be illegally expended. * * *

" * * * The statutes do not provide that the township shall pay anything. The county treasurer is the paymaster. He may pay from the county funds, if he chooses; or he may await the collection of the assessment. If the treasurer chose to delay payment until the assessment was collected, as he would no doubt do, we are unable to see by any stretch of the imagination how taxpayers of a class, of a county, or township, could be interested in or affected thereby. The full cost of the erection of a partition fence is assessed against those directly interested. and no portion thereof is assessed against other property owners. This sort of an assessment is not analogous to a public assessment, like one for county roads or city streets, where the taxing district pays a portion. An assessment for a partition fence building. between two property holders, is not a public assessment, but is in fact a private one in which no taxpayer is interested except the abutting property owners.

"It is therefore the view of this court that the plaintiff's petition does not show that other taxpayers are interested in this controversy. This being true, the plaintiff can not maintain this suit as a taxpayer on behalf of other taxpayers. It is his own particular grievance. The right of a taxpayer to maintain such a suit is a privilege only recognizable and exercisable in a public capacity, and the result to be accomplished must be of benefit to the public within the taxing district. We therefore hold that in the manner drawn the petition does not show that the plaintiff as a taxpayer is entitled to the relief sought."

If the shortage complained of is not recovered by this or any other suit in the state of Ohio liable to the banks and trust companies who were the owners of the interest coupons which were converted by Cortner to his own use. In opinion number 1705, dated February 13, 1928, Honorable Edward C. Turner, then Attorney General, now a member of this court, held in an opinion published in Volume 1 of the Opinions of the Attorney General for 1928, page 373, that "The state will not be liable should securities deposited with the state treasurer under §710-150, GC, be lost through burglary, holdup, theft or otherwise, but in such case the liability for the loss of such security will be one against the state treasurer and the sureties on his official bond," and in another well considered and more elaborate opinion, being number 2450, Volume 3 of the Opinions of the Attorney General, 1928, page 1933. he held:

"Where securities deposited with the state treasurer under §710-150, GC, and §330-3, GC, are lost through burglary, holdup, theft, or otherwise, the state is not liable, but such liability will extend against the treasurer personally and the sureties on his official bond, irrespective of any question of negligence in connection with such laws."

On page 1935 he stated:

"In the consideration of this question, it is necessary to bear in mind that there is a distinction between the loss of **public funds** or monies and the loss of **monies or securities belonging to others**, which by law are placed in the custody of the treasurer."

At page 1937, he stated that " * * * Securities of others * * * **are not**, of course, **technically public funds**."

The question here involved is not so much a question of whether the funds arising from the proceeds of the converted coupons are or may be consid-

ered public funds for any purpose, or whether they may not—it being possible that under some statutory classifications for the particular purpose of that statute that they may be so considered. The real question here is whether they are public funds in the limited sense of whether or not a taxpayer. as such, has any interest therein, or any legal interest in their recovery. Without quoting the opinion of the attorney general at greater length, we are in agreement with his conclusion that no action could be brought against the state of Ohio by the banks to recover such a shortage. We do quote this further language from the first opinion, page 375:

" * * * **Such liability on the part of the state treasurer and the sureties on his official bond would, of course, be to the trust company or corporation which owns such securities and deposits the same with the state treasurer.**"

If it be suggested that the state of Ohio, through its General Assembly, might pay the same to the affected banks as an item in a sundry claims bill and as a moral obligation, the answer is that the state of Ohio and its general assembly is under no legal obligation to make such an appropriation, and it can not be anticipated that the general assembly will take such action. We are here dealing with questions of law. In any event no taxpayer could be affected thereby until such an appropriation bill had actually been passed and the money paid pursuant thereto, and any taxpayer's action based on such a claim of interest by the taxpayer would be premature until such action had been taken by the General Assembly, if, indeed, payment otherwise than as a legal obligation, could be held to have that effect.

If the money sought to be collected in this suit, was collected in this suit or another suit, would it result in any saving or advantage to the taxpayer or the taxpayers as a group? It is suggested that a part of the shortage is made up of deposits of money from the sale of coupons clipped from securities deposited in the state treasury by banks having trust powers which were closed as far back as 1933, or more than five years ago, and that there has been no claim made for these funds by the State Banking Department, and that, pursuant to §286, GC, part of these funds would revert to the general fund of the state and thus be an advantage to the taxpayer. That part of §286, GC, referred to is as follows:

"* * * All money received under color of office and not otherwise paid out according to law, shall be due to the political subdivision or taxing district with which the officer is connected and shall be by him paid into the treasury thereof to the credit of a trust fund, there to be retained until claimed by the lawful owner; if not claimed within a period of five years after having been so credited to said special trust fund, such money shall revert to the general fund of the political subdivision where collected."

The trouble with this argument is that the money constituting the shortage never was received by the treasurer of the state, and therefore it never was and never could have been paid into the treasury to the credit of a trust fund; nor could it have been retained for five years and revert to the state only after having been paid into the trust fund and remaining unclaimed for five years.

If Cortner, when he sold these coupons, had paid the same into the treasury and the same had been paid into a trust fund and remained unclaimed for five years, then and only then would that part of §286, GC be operative.

**Bassett v State, 26 Oh St 543**, is cited on behalf of the plaintiff, but in that case the action was brought by Bassett, the person who deposited and owned the bonds, and not by a taxpayer in behalf of such owner of the bonds; nor was the action by Bassett brought on behalf of the state or its taxpayers, but was brought directly against the state of Ohio as the defendant pursuant to

a special act passed by the General Assembly authorizing the state to be sued as a defendant in that particular case.

**State ex rel Maher v Baker, 88 Oh St 165,** is also cited on behalf of the plaintiff. In that case the action was instituted by the prosecuting attorney to recover for the use and benefit of the county money paid to a contractor in excess of the amount stipulated in the contract, said monies having been paid into the county treasury by virtue of assessments by property owners benefited by the construction of a ditch. It was pointed out by the court that those who had been assessed and had paid their assessments thus being contributors to the fund had "fully and eternally lost all control, dominion and interest in such fund" and had "absolutely parted with" their "property in the same" by reason of the rule that one who pays an assessment can not recover back any part of the same unless "payment was made under the proper protest."

In the case at bar, the banks whose coupons were converted by Cortner had not lost all control, dominion and interest therein, nor had they absolutely parted with all of their property in the same, nor so far as is shown by the pleadings and the evidence, had they parted with the title thereto, the state holding the bonds to which the coupons were attached only as pledges, and it not being shown that the banks were in any wise in default to the state of Ohio.

We recognize the importance of this case and commend the zeal and public spirit which motivated the institution of the action. However, excellence of motive and commendable concern in the public zeal can not supply lack of interest as that term is used in the law, and the court has not been able to find that the plaintiff as a taxpayer, or that any taxpayer or all of them as a group, has been affected or can be legally affected by the subject matter of the action.

It is provided by statute, §11241, GC, that except as provided in §§11242-11243 and 11244, GC, which exceptions are not here applicable, that

"An action must be prosecuted in the name of the real party in interest,"

and said statute is as well applicable to an action sought to be brought by a taxpayer as to all other actions.

It is also urged in defense that the plaintiff, which showed in evidence, only that it had paid a three-cent sales tax on stationery purchased, is not such a taxpayer as would be legally qualified to sue, since, it is claimed, that only so much of the sales tax receipts as were necessary to pay the expenses of administering the Sales Tax Act went into the general revenue fund and that the balance went into the poor relief and local government funds. In view of the conclusion arrived at, on what we think is the major issue, it is not necessary to consider or pass upon this point.

Finding and judgment on the issues joined for defendants. Exceptions.

Motion for new trial may be filed and if filed, may be overruled. Exceptions.